IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R&B RECEIVABLES MANAGEMENT, CORP., d/b/a R&B SOLUTIONS, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, GIAN JOHNSON, Acting Director of The Assister Programs Division of the Consumer Support Group, JULIA DREIER, as an individual, and JOHN DOES 1-5, <br><br> Defendants. | Case No. 15 C 8109 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

R&B Receivables Management Corp. (R&B) alleges that former Department of Health and Human Services (HHS) employee Julia Dreier wrongfully denied R&B grant funds as part of the Navigator Program under the Affordable Care Act (ACA). R&B sued HHS and Dreier. HHS moved to dismiss R&B's claims on multiple grounds.[1] The Court granted the motion in part but declined to dismiss R&B's claims against Julia Dreier in her individual capacity. *R&B Receivables Mgmt. Corp. v. U.S. Dep't of Health and Human Servs.*, No. 15 C 8109, 2016 WL 5341811 (N.D. Ill. Sept. 23, 2016).

---

[1] Dreier had not yet been served with summons when the earlier motion to dismiss was filed.

Dreier has now moved to dismiss R&B's claims against her under Fed R. Civ. P. 12(b)(2) and Fed R. Civ. P. 12(b)(6), arguing that this Court lacks personal jurisdiction over her and that R&B has failed to state a claim. The Court dismisses the claims against Dreier because it lacks personal jurisdiction over her.

**Background**

The Court takes the facts from R&B's complaint, Dreier's reply, and an affidavit by Dreier. On a motion to dismiss for lack of personal jurisdiction, the Court takes the allegations and factual disputes in the light most favorable to plaintiff. *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004)

R&B applied for a healthcare navigator grant as part of a program offered under the ACA through the HHS Center for Medicare and Medicaid Services (CMS). R&B received a grant for the years 2013-2014 to operate as a navigator in Wisconsin. The navigator program in Wisconsin requires businesses to disclose whether they have declared bankruptcy. R&B filed for Chapter 11 bankruptcy reorganization in 2012, due to changes in the law that negatively affected its business in student loans. R&B states that it disclosed its bankruptcy status to the necessary parties in Wisconsin and also notified HHS/CMS. R&B contends that CMS responded that it had no issue with R&B's bankruptcy status as long as it could still be licensed as a navigator in Wisconsin.

R&B states that it successfully fulfilled its role as a navigator in Wisconsin. It applied for another grant for the years 2014-2015. R&B states that it was still in Chapter 11 bankruptcy reorganization at the time it applied but that the ACA navigator grant application did not ask any questions related to bankruptcy. CMS awarded R&B

grants to conduct navigator duties in four states: Illinois, Iowa, Indiana, and North Carolina.

R&B contends that an article published in North Carolina reported that R&B's bankruptcy was pending and criticized CMS for awarding R&B a grant instead of a prior grant recipient based in North Carolina. After this article was published, CMS and Dreier contacted R&B to ask about its bankruptcy status. R&B states that it supplied Dreier with documents for its court-approved bankruptcy reorganization and proof that it was no longer under court supervision after successfully completing the reorganization. R&B contends that Dreier responded with a letter stating that R&B violated conditions of its grant award when it failed to report its bankruptcy status. R&B responded to Dreier's letter, advising that she was mistaken about the timing of the bankruptcy and that the company had already successfully completed the reorganization by the time it applied for a grant. R&B contends that Dreier responded that any further correspondence should be sent to a general email address. This was her last communication with R&B.

Dreier currently resides in Minnesota and no longer works for the federal government. At the time of R&B's grant revocation, she lived in Washington, D.C. and was working in CMS's Maryland office. Dreier states that she never visited Illinois in connection with work. As the director for the navigator grant program, she oversaw 104 entities in 34 states.

R&B alleges that by improperly revoking its navigator grant Dreier violated R&B's constitutional right to due process. It has sued suing her in her individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971). Dreier argues that this Court lacks personal jurisdiction over her and in the alternative that R&B has failed to state a claim upon which relief can be granted.

## Discussion

When considering a motion to dismiss under Fed. R. Civ. P 12(b)(2), the plaintiff has the burden to show that personal jurisdiction over the defendant is proper. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). When the Court rules on a motion to dismiss for lack of personal jurisdiction based on written materials, the plaintiff needs only to make out a prima facie case. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Factual disputes are resolved in the plaintiff's favor. *Id.* (citing *Purdue Res. Found v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003)).

A district court may exercise jurisdiction over a defendant as long as she is subject to jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(A). A court in Illinois may exercise personal jurisdiction over a defendant on any basis allowed under the Illinois Constitution and the Constitution of the United States. *N. Grain Mktg., LLC*, 743 F.3d at 492 (citing 735 Ill. Comp. Stat. 5/2-209(c)). Illinois' long arm statute extends to the constitutional limits; therefore, the due process clause of the Fourteenth Amendment governs whether personal jurisdiction is proper. *N. Grain Mktg., LLC*, 743 F.3d at 492 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

The parties disagree about whether this Court may exercise specific jurisdiction over Dreier; neither contends that she is subject to general jurisdiction in Illinois. For a defendant to be subject to a state's specific jurisdiction, the defendant must have "minimum contacts" with the forum state such that it does not offend "traditional notions

of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific personal jurisdiction is proper when (1) the defendant purposefully directed her activities at the forum state or purposefully availed herself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp.*, 471 U.S. at 472). The main issue in this case is whether Dreier's contacts with Illinois when she revoked R&B's navigator grant and spoke with R&B over phone and email are substantial enough to constitute minimum contacts giving rise to personal jurisdiction here.

The minimum contacts analysis does not differ in cases where a federal employee is being sued in her individual capacity. *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1486 (E.D. Wis. 1993). Allowing a government officer to be subject to personal jurisdiction in every federal district, even after she leaves federal employment, would subject her to a different set of rules for establishing jurisdiction simply because she once worked for the government. *Cf. Stafford v. Briggs,* 444 U.S. 527, 544 (1980). Though the issue in *Stafford* involved whether venue was proper under the Mandamus and Venue Act of 1962, the Supreme Court disagreed with the lower court's ruling that the Act could be used as a mechanism for obtaining personal jurisdiction over defendants who were former government officials. *Id.* at 533. For a federal court to exercise personal jurisdiction over a former government employee sued in her individual capacity, she must have minimum contacts with the forum state, just like any other defendant. *Wag-Aero, Inc.*, 837 F. Supp. at 1486 (interpreting *Stafford's* decision

regarding the Mandamus and Venue Act of 1962 as it applies to conferring personal jurisdiction over former government officials).

If R&B's claim regarding the grant revocation is viewed as a contract dispute, points relevant in determining specific personal jurisdiction include which party initiated the contract would be relevant, where the contract negotiations took place, and where the contract was to be performed. *See N. Grain Mktg., LLC*, 743 F.3d at 493 (citing *Burger King Corp.*, 471 U.S. at 479). In this case, R&B initiated the contract when it applied for the navigator grant; the negotiations took place by phone and email; and the contract was to be performed in four states: Illinois, Iowa, Indiana, and North Carolina. Another relevant (though non-dispositive) factor is whether the defendant physically entered the forum state. *See Wis. Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 677 (7th Cir. 1980) (visits by nonresident defendant in connection with negotiation and performance of the contact were enough to establish personal jurisdiction); *see also Nieman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1194-95 (7th Cir. 1980) (defendant soliciting business and negotiating contract in forum state was sufficient to confer personal jurisdiction). Though the HHS sent a letter of solicitation regarding the grant program to R&B, that was not conduct performed by Dreier, and she did not come to Illinois to negotiate the terms of R&B's grant application.

The relationship between Dreier and R&B resembles a Seventh Circuit case in which a West Virginia company contracted with a Wisconsin company to manufacture goods in Wisconsin. *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 603 (7th Cir. 1979). The contract negotiations and acceptance took place via mail, and any contacts the West Virginia company had with Wisconsin were the result of

the unilateral activity of the Wisconsin company. *Id.* The Seventh Circuit ruled that the court in Wisconsin could not exercise personal jurisdiction over the West Virginia company when it was sued by the Wisconsin company for breach of contract. *Id.* at 598. Similarly, Dreier's contacts with R&B were due to R&B's actions in applying for the grant; the application took place via mail; and contacts between Dreier and R&B regarding the grant took place via email and telephone. There has been criticism of the decision in *Lakeside Bridge* on the basis that the performance of the contract took place in the forum state at the defendant's request. *N. Grain Mktg.*, 743 F.3d at 494. However, *Lakeside Bridge* has never been overturned and the facts in this case can be distinguished from that criticism, because Dreier did not initiate the contract with R&B and does not appear to have been involved in approving R&B as an Illinois navigator. She had no relevant contacts with Illinois other than when she took steps, from Maryland, to terminate R&C as a grant recipient. The handful of phone calls and emails that Dreier made over a five-day period are not sufficient under Seventh Circuit precedent for this Court to exercise personal jurisdiction over her. *Compare Advanced Tactical Ordinance Sys., LLC. v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-03 (7th Cir. 2014) (court in Indiana could not exercise personal jurisdiction over a California defendant that knew the plaintiff was based in Indiana, emailed a list of subscribers that included Indiana citizens, and maintained an interactive website), *with Tamburo*, 601 F.3d at 697 (Illinois court could exercise personal jurisdiction over out of state defendants who emailed plaintiff directly, posted the plaintiff's address in internet forums, told forum users to harass plaintiff, and advised forum users to not buy plaintiff's

7

products, because these allegations were enough to show that defendants purposefully directed their activities at Illinois).

Even if Dreier's conduct that is challenged by R&B was intentionally tortious, it does not establish the necessary contacts to establish specific jurisdiction. R&B contends that Dreier's acts were intentional and directed at Illinois, because she knew R&B's injury would be felt there. But the "effects" test for specific jurisdiction in intentional tort cases established by the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 788 (1984), requires "something more" than the plaintiff feeling an injury in the forum state by a defendant's alleged intentional tort. *See, e.g., Macey & Aleman v. Simmons,* 2012 WL 527526, at *4 (N.D. Ill. 2012) (*citing uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n. 1 (7th Cir. 2010)). In what appears to be the Seventh Circuit's broadest decision applying *Calder*, the defendant, a California shopping cart manufacturer, threatened a New Jersey buyer via telephone to stop purchasing shopping carts from the plaintiff, an Illinois shopping cart manufacturer. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir.1997). The threats directly affected the plaintiff's sale of shopping carts in Illinois. The Seventh Circuit found that was sufficient for an Illinois court to exercise personal jurisdiction over the California company. *Id.* at 1203. R&B contends that because its principal place of business is in Illinois, it felt the harm in this state, making jurisdiction over Dreier appropriate. However, the Seventh Circuit requires more than an injury felt in the forum state; it requires the defendant to have expressly aimed its conduct at the forum state. *Macey & Aleman,* 2012 WL 527526, at *4. Dreier did not expressly target her actions at R&B in Illinois; she revoked R&B's grant in all four states in which it was acting as a navigator. And as director of the

program, Dreier oversaw 134 entities that operated in 34 states. Her actions at issue in this case represented a small fraction of her work for CMS. The Court is unpersuaded that her actions in Maryland that at issue in this case involved expressed targeting of Illinois.

## Conclusion

For the reasons stated above, the Court grants defendant Julia Dreier's motion to dismiss the claims against her for lack of personal jurisdiction.

Date: July 18, 2017

_____
MATTHEW F. KENNELLY
United States District Judge